**MICROSOFT CORPORATION,**
Plaintiff,

v.

**BLACK CAT COMPUTER WHOLE-SALE, INC., 2456 North French Road, Inc., Deborah A. Williams, Michael Williams and John Does 1–10, Defendants.**

No. 00–CV–231A.

United States District Court, W.D. New York.

Sept. 24, 2002.

Hodgson, Russ, LLP., Buffalo, NY (Paul I. Perlman, of Counsel), for the Plaintiff.

Kay & Boose, LLP, New York City (Toby M.J. Butterfield, of Counsel) for the Plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY (Jeremiah J. McCarthy, of Counsel), for the Defendants.

ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1)(B), on October 10, 2000. On August 8, 2002, Magistrate Judge Foschio filed a Report and Recommendation, recommending that plaintiff's motion for summary judgment be granted and that judgment be entered in the amount of $510,000 based on defendants' Copyright Act violations as statutory damages and statutory damages under the Lanham Act in the amount of $900,000 together with costs and attorneys fees in a total amount of $25,737.52, for a total judgment of $1,435,737.52. The Magistrate Judge also recommended that the Court enter the permanent injunction in the form submitted by plaintiff.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, plaintiff's motion for summary judgment is granted and judgment is entered in the amount of $510,000 based on defendants' Copyright Act violations as statutory damages and statutory damages under the Lanham Act in the amount of $900,000 together with costs and attorneys fees in a total amount of $25,737.52, for a total judgment of $1,435,737.52. The Court will also file the permanent injunction in the form submitted by plaintiff

IT IS SO ORDERED.

## REPORT and RECOMMENDATION
## JURISDICTION

FOSCHIO, United States Magistrate Judge.

This matter is before the court based an order of Hon. Richard J. Arcara dated October 10, 2000 referring the case to the undersigned for all pretrial matters. The matter is presently before the court on Plaintiff's motion for summary judgment filed November 29, 2001 (Docket No. 24).

## BACKGROUND

Plaintiff's motion for summary judgment was filed November 29, 2001 with a Statement of Uncontroverted Material Facts (Docket No. 25) ("Undisputed Facts"), Plaintiff's Memorandum of Law in Support of its motion for summary judgment (Docket No. 26) ("Plaintiff's Memorandum"), along with proposed orders of permanent injunction and judgment awarding statutory damages in the total amount of $1,435,737.52. Plaintiff also provides Declarations of Michael Duffield in Support of Plaintiff's motion (Docket No. 27) ("Duffield Declaration"), Paul Perlman in Support of Plaintiff's motion (Docket No. 28) ("Perlman Declaration"), together with attached exhibits, Gilbert Egbert in Support of Plaintiff's motion (Docket No. 29) ("Gilbert Declaration"), Robert Holmes in Support of Plaintiff's motion (Docket No. 30) ("Holmes Declaration"), Steve Schlanger in Support of Plaintiff's motion (Docket No. 31) ("Schlanger Declaration"), Laurie Stein in Support of Plaintiff's motion (Docket No. 33) ("Stein Declaration") and Kristi Lamb in Support of Plaintiff's motion (Docket No. 34) ("Lamb Declaration").

A scheduling order was filed on December 4, 2001 requiring Defendants respond to Plaintiff's motion not later than January 31, 2002. To date, no response has been received. Following the court's request for a summary statement of Plaintiff's position received on July 24, 2002, Defendants' attorney filed a statement informing the court that Defendants have instructed him not to file any opposition to the Plaintiff's motion. *See* Docket No. 39. Oral argument was deemed unnecessary. Based on the following, Plaintiff's motion should be granted in all respects, and a permanent injunction should be signed and entered by the district court thereof together with a judgment awarding statutory damages in the full amount requested by Plaintiff.

## FACTS [1]

Plaintiff's amended complaint ("Complaint") was filed March 22, 2000. In the amended complaint, Plaintiff sought injunctive relief and damages for infringement of seventeen registered copyrights as follows: TXu 649–511 (Windows 95), TX 4–687–920 (Windows 98), TX 4–395–984 (Microsoft Office 97 (Professional Edition)), TX 4–395–639 (Microsoft Access 97), TX 4–395–640 (Microsoft Excel 97), TX 4–395–686 (Microsoft Outlook 97), TX 4–395–685 (Microsoft PowerPoint 97), TX 4–395–687 (Microsoft Word 97), TX 4–395–758 (Microsoft Windows NT Server Version 4.0), TX 4–395–740 (Microsoft Windows NT Workstation Version 4.0), TX 4–905–936 (Microsoft Office 2000 Professional), TX 4–905–950 (Microsoft Access 2000), TX 4–905–949 (Microsoft Excel 2000), TX 4–906–019 (Microsoft Outlook 2000), TX 4–905–952 (Microsoft PowerPoint 2000), TX 4–905–937 (Microsoft Publisher 2000) and TX 4–905–951 (Microsoft Word 2000) pursuant to the Copyright Act, 17 U.S.C. §§ 501,

---

**1.** Taken from the Statement of Undisputed Facts and the papers filed by Plaintiff in support of its motion for summary judgment.

502, 504, 504(c), 504(c)(2). Plaintiff also seeks injunctive relief and statutory damages for violations of ten registered trademarks and service marks in violation of the Lanham Act, 15 U.S.C. § 1114(1) for its actual damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a) and treble damages based on Defendants' willful infringements in violation of 15 U.S.C. 1117(b). Alternatively, Plaintiff sought statutory damages pursuant to 15 U.S.C. § 1117(c) and trebling under 15 U.S.C. 1117(c)(2) based on Defendants' willful infringements. Plaintiff also alleged violations of 15 U.S.C. § 1125 of the Lanham Trademark Act alleging violations arising from false designation of origin, description and representative of packaging, New York State Common Law, Unfair Competition and Accounting. Defendants' answer was filed on October 2, 2000 (Docket No. 15).

Plaintiff's ownership rights in each of the trademarks and copyrights at issue is supported by Exhibits 1 through 27 to the Perlman Declaration. As Defendants have filed no statement of undisputed facts in opposition and based on their attorney's representation that Defendants will not oppose the instant motion, Plaintiff's ownership in the respective copyrights and trademarks must be found as established.

As a result of private investigations, Plaintiff determined that Defendants were engaged in retail sales of non-genuine Microsoft software and hardware. Undisputed Facts at ¶¶ 11–12. Such software was determined to be counterfeit. *Id.* Plaintiff then notified Defendants they had distributed counterfeit Microsoft software and demanded Defendants cease and desist their unauthorized and illegal use of Microsoft's marks and copyrighted works. Undisputed Facts at ¶ 13. It is also undisputed that Defendants had purchased genuine Microsoft products from authorized distributors.

Nevertheless, Defendants continued to distributed counterfeit Microsoft software including, specifically, Microsoft Windows NT Server Version 4.0, NT Workstation Version 4.0. Undisputed Facts at ¶ 15. As a result, a second cease and desist letter was sent to Defendants on March 18, 1998 which the Defendants received and read. Undisputed Facts at ¶ 16. Following the second cease and desist letter from Microsoft, Defendants continued distributed counterfeit Microsoft software including Microsoft Office 97 Professional Edition, Microsoft Windows 98, OfficePro 97, Office 2000 Professional, OfficePro 2000. Undisputed Facts at ¶ 17. The eight aforementioned programs include components programs containing copyrighted material made by Microsoft as follows: Microsoft Access 97, Microsoft Excel 97, Microsoft Outlook 97, Microsoft PowerPoint 97, Microsoft Word 97, OfficePro 2000, Microsoft Access 2000 and component parts of OfficePro 2000 including Microsoft Access 2000, Microsoft Excel 2000, Microsoft PowerPoint 2000, Microsoft Publisher 2000 and Microsoft Word 2000. Undisputed Facts at ¶ 27.

According to vendor invoices, Defendants acquired 3,981 units of purported Microsoft software, all of which had been obtained from sources other than Microsoft authorized distributors. Undisputed Facts at ¶ 21.

Following Plaintiff's private investigation directed against Defendants, based on a criminal investigation by the State of New York against Defendants 2456 North French Road, Inc. and Michael Williams, 2456 North French Road and Defendant Michael Williams pleaded guilty to state trademark counterfeiting charges and were sentenced on or about June 21, 2000. Defendant Deborah Williams is the sole

owner, officer and director of 2456 North French Road, Inc. and manages the finances of Defendant Black Cat; Michael Williams is the general manager of Black Cat and handles the company's acquisitions, sales and distribution of inventory. Undisputed Facts at ¶ 22–24.

Both Defendants Deborah and Michael Williams work at Defendant Black Cat full time and together control day-to-day operations of the business; both draw salaries from the company and are dependent on the profitability of the business. Undisputed Facts at ¶ 24–26. Defendants Michael and Deborah Williams founded Defendant Black Cat Computer Wholesale, Inc. in 1993, and operated Black Cat through that corporate forum until 1995 when they transferred the business to 2456 North French Road, Inc. Undisputed Facts at ¶ 10.

Microsoft has incurred at least $22,249.90 in attorneys fees together with costs in the amount of $3,487.62, such fees are the result of the work of several attorneys in Buffalo and New York City with billing rates ranging from $75 an hour to $275 an hour. Perlman Declaration at ¶ 4.

Purchases of the infringing software with infringing trademarks from Defendants are detailed in the affidavits of private investigators and establish that on March 21, 1997, August 21, 1997 and October 23, 1998 the investigator placed orders for several items of Microsoft products which are the subject of the instant litigation by placing telephone orders with Defendant Black Cat Computer Wholesale. Egbert Declaration at ¶ 2–4. Additional

purchases of Microsoft products placed on August 24, 1999 and January 18, 2000 by another investigator who also placed orders for Microsoft products from Black Cat Computer Wholesale. Schlanger Declaration at ¶ 2–3. All of these products as purchased from Defendant were received and forwarded to Microsoft for evaluation. *See* Holmes Declaration; Duffield Declaration.

Each of the products purchased from Defendants were reviewed by a software specialist on behalf of Plaintiff who determined that each was counterfeit. Lamb Declaration ¶ 1–29.[2] According to Defendants' business records, Defendants distributed a minimum of 8,922 units of counterfeit Microsoft Windows and Office software. Plaintiff's Memorandum at 5.

Accordingly, the court finds that the undisputed evidence including Defendants' deposition testimony and business records, establishes that Defendants violated Plaintiff's copyrights and trademarks as alleged in the Complaint and that by dealing in such counterfeit software, Defendants willfully infringed Microsoft's copyrights and trademarks, falsely described the origin of the software Defendants distributed and otherwise engaged in unfair competition in violation of state law.

## DISCUSSION

■ Summary judgment may be granted in cases involving distribution of counterfeit copyrighted material and associated trademarks. *Microsoft Corporation v. Compusource Distributors, Inc.,* 115 F.Supp.2d 800, 812 (E.D.Mich.2000); *Mi-*

2. Although, according to Plaintiff, Defendants Michael and Deborah Williams transferred Black Cat's business to 2456 North French Road, Inc. in 1995, based on the declarations the court finds that actual sales of the infringing products were made under the auspices of Black Cat in the period following 1995. Defendant does not dispute that the sales of the infringing product as described in the various declarations were made from Black Cat. Given that Defendants have not opposed the motion, the court also finds that Defendant North French Road, Inc. is liable to Plaintiffs based on contributory infringement principles even if the infringement occurred in connection with sales in the name of Black Cat rather than 2456 North French Road, Inc.

*crosoft Corporation v. Grey Computer*, 910 F.Supp. 1077, 1094 (D.Md.1995); *Microsoft Corporation v. CMOS Technologies, Inc.*, 872 F.Supp. 1329, 1334 (D.N.J.1994); *Microsoft Corporation v. Logical Choice Computers, Inc.*, 2001 WL 58950 at *10 (N.D.Ill. Jan.22, 2001). The undisputed facts establish that in this case no reasonable juror could fail to find other than willful infringement on the part of the Defendants based on Defendants' "willful blindness" regarding the counterfeit nature of the infringing products as Defendants were aware of authorized distributors but did not utilize them, ignored facts suggesting that their suppliers' software was not genuine, and continued to obtain and distribute counterfeit software after being specifically requested by Plaintiff to cease and desist therefrom. Further a court may consider the Defendants' state of mind in determining whether to enhance statutory damages or to award attorneys fees. 17 U.S.C. § 504(c)(2). However, Plaintiff, in this case, seeks only the maximum statutory damages available for non-willful infringement. Plaintiff's Memorandum at 8, fn. 9. Both Defendant Michael Williams and Defendant Deborah Williams are personally liable for actual infringement, and contributory infringement. Michael Williams was general manager of Black Cat and personally handled the company's software acquisition, sales and distribution of inventory including Microsoft software. Plaintiff's Memorandum at 15. Mr. Williams was aware of and read the cease and desist letter but failed to stop further unlawful acquisitions of counterfeit Microsoft software. *Id.* Williams is also liable for contributory infringement based on his right and ability to supervise the infringing conduct committed on behalf of the Defendant corporations and received direct financial benefit from the infringing conduct in the form of a substantial salary, dependent upon the success of the company. *Id.*

Deborah Williams is similarly liable for contributory and vicarious infringement liability. Ms. Williams shared responsibility with her husband, Michael Williams, for the day-to-day operation and management of the businesses and was personally responsible for their finances including payment of Black Cat suppliers. Plaintiff's Memorandum at 15. She personally received and signed for the first cease and desist letter and therefore was aware of the companies' infringements. *Id.* Further, she had the right and ability to supervise and also possessed the direct financial interest in the profitability of the companies. *Id.*

At any time before award of judgment in a copyright infringement action a plaintiff may elect to receive statutory damages. 17 U.S.C. § 504(c)(1). Statutory damages are fixed at up to $30,000 per copyright infringed. 17 U.S.C. § 504(c). Further, in cases involving violations of trademarks such as counterfeiting of a trademark, the trademark owner may elect at any time before final judgment to recover statutory damages up $100,000 per trademark infringement. 15 U.S.C. § 1117(c). A successful plaintiff in a combined copyright and trademark infringement action is entitled to separate awards of statutory damages under both the Copyright Act and the Lanham Act when a defendant has infringed both the owner's trademarks and copyrights. *Nintendo of America, Inc. v. Dragon Pacific International*, 40 F.3d 1007, 1011 (9th Cir. 1994) (a defendant commits "two wrongs" when defendant's actions violate both the Copyright Act and the Lanham Act; to "effectuate the purposes of both statutes, damages may be awarded under both") *affm'd* 51 F.3d 281 (9th Cir.1995). *See also Microsoft Corporation v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800, 812 (E.D.Mich.2000) and *Microsoft*

*Corporation v. Logical Choice Computers, Inc.,* 2001 WL 58950 at *10 (N.D.Ill. Jan.22, 2001).

Although the Second Circuit has yet to address the issue, at least one district court within the Second Circuit has held that a successful plaintiff may be awarded damages under both the Lanham Act and the Copyright Act. *Viacom International Inc. v. Fanzine International, Inc.,* 2001 WL 930248, * 5 (S.D.N.Y. Aug.16, 2001) (holding that a plaintiff may recover damages under both the Lanham Act and the Copyright Act provided the copyright damages serve a purpose other than compensation); *Lyons Partnership, L.P. v. AAA Entertainment Inc.,* 1999 WL 1095608, *9–10 (S.D.N.Y.1999) (holding that plaintiff could recover damages under both the Lanham Act and the Copyright Act because the profits awarded under the federal trademark statute constitute compensation, rather than a penalty, while statutory damages are awarded under the Copyright Act are designed to serve a variety of purposes other than compensation, including deterrence and punishment). The court also finds the Ninth Circuit's reasoning on this issue in *Nintendo, supra,* persuasive.

■ Additionally, attorneys fees and costs may be awarded under both the Lanham Act and Copyright Act. The Lanham act specifically provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A willful infringement may be considered an exceptional case under the Lanham Act. *See Bambu Sales, Inc. v. Ozak Trading Incorporated,* 58 F.3d 849, 854 (2d Cir.1995). Additionally attorneys fees are also awardable under the Copyright Act to a prevailing party provided such an award "seeks to promote the Copyright Act's objectives." *See Kepner–Tregoe, Inc. v. Vroom,* 186 F.3d 283, 289 (2d Cir.1999) citing *Fogerty v. Fanta-*

*sy, Inc.,* 510 U.S. 517, 535 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Here, the undisputed evidence demonstrates Defendants willfully infringed both Plaintiff's copyright and trademarks. Accordingly, such willful infringements justify the award of attorneys fees in addition to statutory damages as requested by Plaintiff. Finally, Plaintiff is also entitled to a permanent injunction under the Lanham Act, 15 U.S.C. § 1116, to prevent future violations by Defendants and under the Copyright Act. *Blue Ribbon Pet Products, Inc. v. Rolf C. Hagen (USA) Corp.,* 66 F.Supp.2d 454, 464 (E.D.N.Y.1999).

■ The court has reviewed Plaintiff's statement of the basis and computation of its requests for attorneys fees and finds that the amount requested and such fees and costs are reasonable considering the complexity of the case, the evident experience of the attorneys and prevailing rates in both the Buffalo and New York City legal service markets where the legal work was performed. Accordingly, for the reasons stated and more fully discussed in the thorough memorandum of law provided by Plaintiff in support of its motion, the motion should be granted in all respects.

## CONCLUSION

Based on the foregoing, Plaintiff's motion should be GRANTED, judgment entered in the amount of $510,000 based on Defendants' Copyright Act violations as statutory damages and statutory damages under the Lanham Act in the amount of $900,000 together with costs and attorneys fees in a total amount of $25,737.52 for a total judgment of $1,435,737.52. Further, the court should enter the permanent injunction in the form submitted by Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.